UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **Bobbitt** | **Civil Action No. 18-01506** |
| **Versus** | **Judge Michael J Juneau** |
| **Commissioner Of Social Security** | **Magistrate Judge Carol B Whitehurst** |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that this matter should be reversed and remanded.

## Administrative Proceedings

The claimant, Crystal Boutte, fully exhausted her administrative remedies before filing this action in federal court. On October 13, 2015, she filed applications for a period of disability and disability insurance benefits ("DIB") alleging that she became disabled on October 1, 2009. *Tr. 19*. Her applications were denied. *Id..* She requested a hearing, which was held on November 20, 2017 before Administrative Law Judge Glynn F. Voisin. *Tr. 19, 27*. Claimant elected to appear and testify without the assistance of an attorney or other representative. *Tr. 19*. The ALJ determined that the claimant's earnings record shows she acquired sufficient quarters of coverage to remain insured through December 31, 2014. Thus, she must

establish disability on or before December 31, 2014 in order to be entitled to a period of disability and disability insurance benefits. The ALJ decided that the claimant was not disabled within the meaning of the Social Security Act from October 1, 2009 through December 31, 2014, the date last insured. *Tr. 27.* Claimant requested review of the decision, but the Appeals Council found no basis for review. *Tr. 1.* Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). Claimant then filed this action seeking review of the Commissioner's decision.

## **Summary of Pertinent Facts**

The claimant was born on June 25, 1964. At the time of the ALJ's decision, she was 52 years old. The claimant has an Eighth Grade education and is able to communicate in English. *Tr. 16, 41, 54.* Her relevant work experience is as a cashier or clerk and a store manager. *R. 9.* The claimant is obese, her weight having increased from 262 pounds in 2011 to 340 pounds at the time of her hearing. *Tr. 40, 175.*

The claimant's medical file is incomplete and contains only the following: (1) April 15, 2010 medical exam, Dr. Mary Ellon Allen, MD, Family Practitioner, *Tr. 1F, 3-6*; (2) April 27, 2010 MRI results, Triparish Orthopedic and Neurosurgical, *Tr. 1F, 10-11*; (3) May 11, 2010 assessment, Dr. Mary Ellon Allen, *Tr. 1F, 7-9* (4)

November 25, 2015 Letter from Dr. Allen, *Tr. 2F, 1*; (5) May 1, 2016 Treatment Note, Jeffrey Fitter MD, Orthopedic Surgeon *Tr. 3F, 4F (repeat)*.

At the April 2010 examination, the claimant complained of low back pain with recurring occasional knee pain. Dr. Allen noted that the claimant's "functional impairment" was "severe" and "when present it interferes with most, but not all, daily activities. Mobility is worse." Medication included Tizanidine and Tramadol. The lumbar MRI performed on April 27, 2010 indicated protruded disc herniations at every level, L1/2 through L5/S1. In May 2010, Dr. Allen found "significant degeneration" at L4/5 and L5/S1. She recommended exercise and weight loss. The claimant's weight was noted as 258 pounds.

The state agency physician, Johnny B. Craig, MD, reviewed the claimant's medical evidence of record. In a December 16, 2015 disability determination explanation, Dr. Craig opined that the claimant could stand or walk as well as sit for about 6 hours in an 8-hour workday. Dr. Craig found the claimant's work capacity to be medium. He noted that while the claimant had "some limitations to perform work related activities," the vocational information was not sufficient to enable determine as to whether the claimant could have performed any of her past relevant work. Nonetheless, he stated that "evidence in the file" indicated she "could have adjusted to other work."

In a November 25, 2015 letter to Disability Determination Services, Dr. Allen noted that the claimant's "insulin resistance, hypertension, gout, and hypothyroidism" were stable and stated that she was "unable to approve disability benefit eligibility at this time because I feel as though maintaining an active lifestyle would only benefit this patient." She noted the claimant had seen Dr. Lipstate, Rheumatologist, in Lafayette for chronic lumbago and joint pain, and therefore, she would "leave the decision to him regarding her chronic lumbago and joint pain."

The claimant was examined on May, 2016 by Dr. Jeffrey Fitter, who noted that her knee examination was difficult due to her size. X-rays showed severe arthritic change with bone on bone medial compartment and tibia erosion in her left knee, and severely arthritic right knee. Severe arthritic change was shown in the left hand and right shoulder x-rays showed "quite a bit of spurring at the AC." Dr. Fitter injected both knees. The claimant indicated she would consider injections in the thumb and right shoulder. She was to continue taking Mobic.

In the November 20, 2017 hearing, the ALJ noted that the claimant's medical records were incomplete. He told her that he would leave the record open for 15 days and "I'll have you sign authorization and I'll try and get those records for you, okay?" and later "I'll try and get those records you spoke of; we'll have you fill out the forms for that, okay?" *Tr. 38, 45*. When asked if the claimant could go back to

4

her job, she responded "I can't walk or sit for any length or time. I can't wash my dishes without having to stop and sit down. I can't walk any distance." *Tr. 41*. He then asked why she considered herself disabled to which she stated, "Because I can't walk or sit." *Id.* As to her limitations, the claimant stated that she "can't sit in straight back chairs for very long;" "could walk for very short periods" and lift only "very light." *Tr. 43-44*. She also stated that she "can't walk in the store long enough to grocery shop." *Tr. 44*. The claimant explained that if she stood to do dishes, after a few minutes the pressure and sharp pain would require her to sit down for a minute and then get back up to finish. *Tr. 44*. She can only do "very light" housework—her husband does most of the sweeping and "mopping is almost impossible...just tiny bits at a time." *Tr. 45*.

The claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.*

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence, *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985), and credibility assessments, *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991), are for the Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Id.*

**B.**

## C. <u>Entitlement to Benefits</u>

The DIB program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B).

## D. <u>Evaluation Process and Burden of Proof</u>

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. This process requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix

1; (4) is able to do the kind of work she did in the past; and (5) can perform any other work. 20 C.F.R. §§ 404.1520(a)(4). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity, 20 C.F.R. § 404.1520(a)(4), by determining the most the claimant can still do despite her physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if she can still do her past relevant work and at the fifth step to determine whether she can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Id.* at 1302; *Perez v. Barnhart*, 415 F.3d 457, 461

(5th Cir. 2005). If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan*, 38 F.3d at 236.

### E. <u>The ALJ's Findings and Conclusions</u>

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since October 1, 2009. *Tr. 21.* This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe disorders of the back (discogenic and degenerative); osteoarthrosis and allied disorders, diabetes mellitus, essential hypertension, gout and obesity (20 CFR 404.1520(c)). *Id.* This finding is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment, specifically listings 1.04 and 1.02. *Tr. 22.* The claimant did not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift/carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; stand/walk for 6 hours in an 8-hour workday; and push/pull as much as the lift /carry limit; never climb ramps, stairs, ladders, ropes or scaffolds; and occasionally

balance, stoop, kneel, crouch and crawl. *Id.* The claimant challenged this finding.

At step four, the ALJ found that the claimant was capable of performing past relevant work as a cashier or store manager. *Tr. 25.* The claimant challenged this finding in that it requires "light work."

At step five, the ALJ found that the claimant was not disabled from October 1, 2009 through December 31, 2014, the date last insured, because there are jobs in the national economy that she can perform. *Tr. 26.* The claimant challenged this finding.

### F. The Allegations of Error

The claimant contends that the ALJ erred by (1) failing to satisfy his "Heightened Duty" to an unrepresented claimant; (2) failing to sufficiently develop the record; and (3) assigning a functional capacity for the performance of light work. As these alleged errors are interrelated, the Court will consider them as follows.

**1. The ALJ Erred In Failing To Provide A Heightened Duty To The Unrepresented Claimant In Sufficiently Developing the Record And Thereby Creating An Invalid RFC Opinion To Perform Light Work.**

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) (citing *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir. 1981); *James v. Bowen*, 793 F.2d 702, 704 (5th Cir. 1986)); *see also*

10

20 CFR §§ 404.1512(b)(1), (b)(2) & 416.912(b)(1), (b)(2) ("[B]efore we make a determination that you are not disabled, we will develop your complete medical history ... and may ask you to attend a consultative examination at government expense.").

Here, the ALJ considered, in his words, a "quite thin" record. *Tr. 23.* During the hearing, the ALJ asked the claimant if she had any objections to the documents in the record. She stated that records were missing and that she had attempted to obtain records, but specifically was unable to get records from the "Headache and Pain Center." *Tr. 38.* The ALJ stated that he would leave the record open for 15 days and "I'll have you sign authorization and I'll try and get those records for you, okay?" *Id.* He later stated, "I'll try and get those records you spoke of; we'll have you fill out the form for that, okay?" *Tr. 45.* At that time the claimant responded, "I would like you all to just maybe send me to you all's doctor so he could, you know, see himself. *Id.* The ALJ stated "okay." *Id.* The record provides no indication that the ALJ made any attempt to obtain additional medical records—from the Headache and Pain Center, Dr. Lipstate or even updated records from Dr. Allen. Nor did the ALJ use his authority to schedule a Consultative Examination.

The claimant argues the ALJ failed to fulfill his heightened duty to fully and fairly develop the record because the ALJ did not obtain all of the claimant's medical

11

records. "An administrative law judge has a duty to fully and fairly develop the facts relative to a claim for disability benefits." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000); *see also* 20 C.F.R. § 416.912 (stating that the SSA has the responsibility to develop a complete medical history before making a determination that the claimant is not disabled); 20 C.F.R. § 416.917 (stating that, if the medical sources are not able to provide sufficient medical evidence for a determination of disability, the SSA will request a consultative examination). When, as here, a claimant is not represented by counsel, the ALJ owes a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.*; *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) (explaining that because hearings under the Social Security Act are non-adversarial, "[t]he hearing examiner has the duty, accentuated in the absence of counsel, to develop the facts fully and fairly and to probe conscientiously for all of the relevant information"). A federal court will reverse the decision of an ALJ as not supported by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby. *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). That is the case here.

The claimant's medical records consist of two visits in April and May 2010 to Dr. Mary Ellon Allen, a family physician, and a lumbar MRI performed in April

12

2010. At that time the claimant's weight was recorded as 258 pounds. A medical examination by Orthopedic surgeon, Dr. Jeffrey Fitter was dated May 2016, after the claimant's last insured date. Dr. Fitter's examination revealed that both of the claimant knees were "severely arthritic" with "bone on bone medical compartment" and tibia erosion. *Tr. 4F*. He noted that at that time the claimant was "quite heavy at 300 pounds." Six months prior to Dr. Fitter's examination Dr. Allen wrote a disability letter which stated she saw the claimant in September 2015 for a "lab review and general checkup." *Tr. 2F*. She stated that she would not recommend the claimant for disability because her insulin resistance, hypertension, gout and hypothyroidism were controlled with medication. She further stated that she could not speak to the claimant's "chronic lumbago and joint pain" as the claimant was seeing Dr. Lipstate [Rheumatologist] of Lafayette, Louisiana. There are no medical records from Dr. Lipstate.

    The ALJ stated he could not consider Dr. Fitter's report because it was after the last date insured. However, he gave Dr. Allen's letter "great weight" despite the fact that her alleged examination had nothing to do with the claimant's primary severe disabilities—lumbar herniations and osteoarthrosis; was after the last date insured; and her report was not contained in the record. The ALJ failed to obtain records related to the claimant's severe arthritis with "bone on bone" knee joints and

13

failed to consider the claimant's significant weight gain from the 2010 records of Dr. Allen (258 pounds) to the 2016 record of Dr. Fitter (300 pounds), and ultimately her weight at the time of the hearing (340 pounds). These failures resulted in the ALJ's prejudicial RFC assessment that the claimant could perform light work despite her testimony that she could not stand long enough to wash the dishes for herself and her husband.

The claimant's attorney proffered that a consultative examination would provide a valid basis to render an opinion as to her RFC based on the state of the claimant's herniated discs, the time during which her knees became severely arthritic and when her weight became severely limiting such that she can no longer stand or sit. "The decision to order a consultative examination is within the ALJ's bailiwick." *Harper v. Barnhart*, 176 F. App'x 562, 566 (5th Cir. 2006). An ALJ must order a consultative evaluation when it is necessary to enable him to make the disability determination. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). Here, the ALJ had a duty to obtain a consultative examination because the extent of the claimant's debilitating arthritis and the effect of her obesity is not clear from the medical records. The claimant contends that the ALJ's reliance solely on her family practitioner's opinion, which specifically deferred to another doctor for an opinion on joint problems, was not a valid basis to render an opinion as to a "light" work

capacity. The Court agrees that the ALJ's reliance raises suspicion that the claimant's impairments caused limitations that were not reflected in the RFC, and therefore, was not supported by substantial evidence in the record.

## **Conclusion and Recommendation**

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions that an ALJ fully and fairly develop the record as set out in this memorandum to insure that it contains sufficient evidence to make an informed decision and to consider such evidence in its opinion. The Court further recommends that a consultative rheumatological examination be ordered with particular consideration of the onset of the claimant's severe arthritis and the effect of her morbid obesity on her exertional limitations.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the

proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 21st day of November, 2019.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE